IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **AMIT SHARMA,** | * | |
| Plaintiff | * | |
| v. | * | CIVIL No. 12-cv-2269-JKB |
| **HOWARD COUNTY,** *et al.*, | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Amit Sharma ("Plaintiff") brought this suit against Howard County (the "County"), Ken Ulman, Marsha McLaughlin, Todd Allen and Tom Butler ("Defendants") alleging violations of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, MD. CODE ANN. STATE GOV'T § 20-606, the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2510, *et seq.*, the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, *et seq.*, and MD. CODE ANN. CRIM. LAW § 7-302. Now pending before the Court is Defendants' motion to dismiss (ECF No. 10). The issues have been briefed and no hearing is required. Local Rule 105.6. For the reasons set forth below, Defendants' motion will be GRANTED IN PART and DENIED IN PART.

**I.   BACKGROUND**[1]

Plaintiff, who has a severe asthmatic condition, was employed as an engineer by the Howard County Department of Planning and Zoning from July 2005 until January 3, 2011. (Am.

---

[1] The facts are recited here as alleged by the Plaintiff, this being a motion to dismiss. *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

1

Compl. ¶¶ 11-13, 47; ECF No. 7.)  In October 2008, Plaintiff requested intermittent leave pursuant to the FMLA and a reasonable accommodation under the ADA.  (*Id*. ¶ 13.)  From that time until August 2010, Plaintiff took intermittent FMLA leave, apparently without issue.  (*Id.* ¶¶ 16-19.)  In August 2010, Plaintiff received a negative performance evaluation, which indicated that he failed to meet acceptable standards in a performance category titled "Accountability/Attendance/Punctuality."  (*Id.* ¶¶ 19-20.)  Plaintiff complained that the performance evaluation inaccurately reflected the number of non-FMLA leave hours he had taken; the County revised this portion of his evaluation but refused to adjust its rating in the attendance category.  (*Id.* ¶¶ 23, 24, 28.)  In September 2010, Defendant McLaughlin issued Plaintiff "a disciplinary action" and implemented a procedure by which Plaintiff was required to notify his supervisor when he took FMLA leave.  (*Id.* ¶¶ 30, 34.)

Plaintiff was disciplined under this new policy in October 2010, and Plaintiff registered at least two written complaints with his employer during the same month.  (*Id.* ¶ 39-42.)  In November 2010, Plaintiff "sent a written FMLA discrimination and retaliation complaint to the County solicitor."  (*Id.* ¶ 43.)  In December 2010, Defendant Allen instructed Plaintiff "to 'immediately stop' making FMLA complaints."  (*Id.* ¶ 41.)  The County issued Plaintiff a charge of dismissal on December 20, 2010, and "conducted a pre-termination hearing on January 3, 2011."  (*Id.* ¶ 46-47.)  On January 4, 2011, "the County issued a Final Dismissal Decision."  (*Id.* ¶ 48.)

Defendants assert that Plaintiff appealed his termination to the Howard County Personnel Board (the "Board"), "which concluded after a full evidentiary hearing[,] at which Mr. Sharma was present and represented by counsel, that his termination was not 'clearly erroneous, arbitrary and capricious, or contrary to law.'"  (Def. Br. at 7, ECF No. 10-1.)  The Board's decision "was

upheld by the Circuit Court for Howard County." (*Id.*)  Plaintiff alleges that Defendant Butler "admitted under oath"—presumably at the Board hearing—that he undertook an investigation into Plaintiff's work activity "in response to the grievance that Plaintiff filed." (Am. Compl. ¶¶ 48, 49.)  As part of this investigation, Defendant Butler "captured Plaintiff's home computer password by logging his keystrokes," "hacked into Plaintiff's personal computer located in his home and reviewed Plaintiff's personal health, financial, and privileged attorney-client communications and materials related to his discrimination claims." (*Id.* ¶¶ 52-53.)

## II.   LEGAL STANDARD

A motion to dismiss under FED. R. CIV. P. 12(b)(6) is a test of the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  To pass this test, a complaint need only present enough factual content to render its claims "plausible on [their] face" and enable the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The plaintiff may not, however, rely on naked assertions, speculation, or legal conclusions. *Bell Atl. v. Twombly*, 550 U.S. 544, 556-57 (2007).  In assessing the merits of a motion to dismiss, the court must take all well-pled factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).  If after viewing the complaint in this light the court cannot infer more than "the mere possibility of misconduct," then the motion should be granted and the complaint dismissed. *Iqbal*, 556 U.S. at 679.

### III.     ANALYSIS

#### A.     Preclusion

Defendants assert that Plaintiff appealed his termination to the Howard County Personnel Board, which ruled that his termination was not clearly erroneous, arbitrary and capricious, or contrary to law.  (Def. Br. at 7.)  Plaintiff petitioned the Circuit Court for Howard County for review of the Board's decision; the court denied that petition.  (*Id.*)  Defendants argue that Plaintiff is therefore collaterally estopped from "re-litigating the basis for his termination."  (Def. Reply Br. at 2, ECF No. 19.)

Although Defendants argue that Plaintiff's claims are barred by collateral estoppel, which is also known as issue preclusion, some of Defendants' arguments appear to fall under the doctrine of *res judicata*, or claim preclusion.  (*See* Def. Br. at 1 ("his claims are barred by collateral estoppel[]"); Def. Reply Br. at 2 ("the record is undisputed that he had the opportunity to include this claim but he never chose to do so"); *id.* at 3 (Plaintiff "had the opportunity to raise his discrimination claims before the Personnel Board").)  The Court will therefore consider Defendants' brief to raise the defenses of issue and claim preclusion.  Under either theory, Defendants have failed to meet their burden of establishing that Plaintiff is precluded from seeking relief for the claims in his amended complaint.

"Collateral estoppel or issue preclusion forecloses 'the relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom [it] is asserted had a full and fair opportunity to litigate.'"  *Ramsay v. I.N.S.*, 14 F.3d 206, 210 (4th Cir. 1994) (citing *Va. Hosp. Ass'n v. Baliles*, 830 F.2d 1308, 1311 (4th Cir. 1987)).  The proponent of the estoppel must establish five elements: "(1) the issue sought to be precluded is identical to one previously litigated; (2) the

issue must have been actually determined in the prior proceeding; (3) determination of the issue must have been a critical and necessary part of the decision in the prior proceeding; (4) the prior judgment must be final and valid; and (5) the party against whom estoppel is asserted must have had a full and fair opportunity to litigate the issue in the previous forum." *Sedlack v. Braswell Servs. Group, Inc.*, 134 F.3d 219, 224 (4th Cir. 1998).

The Board's order includes several pages of factual findings and conclusions of law. (*See* Bd. Decision and Order at 12-17, ECF No. 4-3.)  Unfortunately, Defendants have failed to identify specific precluded issues that would prevent the Plaintiff from adequately pleading or ultimately proving the employment-related claims asserted in the amended complaint. Defendants assert that Plaintiff should be collaterally estopped from (1) relitigating "the basis for his termination" (Pl. Br. at 2);  (2) "alleging that his termination was unlawful or based upon anything other than the reason upheld by the Circuit Court for Howard County" (Pl. Br. at 7); and (3) relitigating "the question of [Plaintiff's] termination" (*id.* at 8).  However, although the Board's order includes general statements that the County's decision to terminate Plaintiff "comported with law," the scope of the proceeding before the Board appears to have been quite narrow.  The Board determined that there was sufficient evidence to support Plaintiff's dismissal for violation of County policies against personal use of communication systems and insubordination.  (*See* Bd. Decision and Order at 16-17.)  Based on the limited record in this case, the Court cannot determine that the Board actually considered and necessarily resolved all issues related to "the basis for his termination," including all of the theories that Plaintiff asserts in the amended complaint.

Defendants argue that Plaintiff should be precluded from litigating the basis for his termination in this forum because he had the opportunity to raise all of his employment-related

claims before the Board. In support, they rely heavily on *Davani v. Clement*, 263 Fed. Appx. 296 (4th Cir. 2008), in which the Fourth Circuit affirmed the district court's dismissal of a case very similar to this one. In *Davani*, the plaintiff brought employment-related claims against a Virginia state agency in federal court after challenging his termination through state employee grievance procedures. *Id.* at 297. The Fourth Circuit affirmed the district court's dismissal of the case, holding that the claims were barred by collateral estoppel and *res judicata*. However, *Davani* is readily distinguishable because Defendants have offered the Court very little information about the proceeding before the Board.

In *Davani*, after "carefully review[ing] the record in the case," the Fourth Circuit determined that issues relevant to the federal litigation were actually litigated and necessarily resolved in the prior proceedings. *See id.* at 298. The Fourth Circuit explained that the plaintiff offered in the administrative proceeding a "voluminous collection of exhibits . . . to support his claim that the [defendant] had subjected him to an ongoing campaign of discrimination and retaliation." *Id.* Indeed, the plaintiff's counsel presented in the administrative proceeding "precisely the same history of discrimination and retaliation that he [presented] in the federal complaint." *Id.* Furthermore, these issues had to be resolved in the administrative proceeding because the administrative judge "had the authority and the responsibility to consider this broader evidence as potential mitigation of the [defendant's] disciplinary action against [the plaintiff]." In *Davani*, the Fourth Circuit had enough information to determine that the relevant issues were actually litigated and necessarily decided in the administrative proceeding.

In this case, Defendants have not offered the Court sufficient information to make a similar determination. Defendants have offered the Court no information about the evidence presented to the Board, no evidence that the Board considered Plaintiff's allegations of

discrimination, and no explanation as to how such evidence would have been relevant to the proceeding before the Board.  The only evidence of the content of the Board's proceedings that Defendants have presented is a four-page excerpt of the transcript which, if anything, suggests that the Board may not have considered Plaintiff's FMLA and ADA claims.  (Def. Reply Br. Ex. 1 at 3, ECF No. 19-1 (noting that Plaintiff did not file formal FMLA or ADA appeals with the Board).)  Therefore, the Court cannot conclude at this time that dispositive issues in this litigation were actually litigated before the Board, actually determined by the Board, or necessary for the Board's decision.

To the extent that Defendants argue that Plaintiff's claims are barred as *res judicata*, they have failed to meet their burden on that front as well.  Generally, "[f]or *res judicata* to prevent a party from raising a claim, three elements must be present: '(1) a judgment on the merits in a prior suit resolving (2) claims by the same parties or their privies, and (3) a subsequent suit based on the same cause of action.'"  *Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 210 (4th Cir. 2009) (quoting *Aliff v. Joy Mfg. Co.*, 914 F.2d 39, 42 (4th Cir. 1990)).  However, state law controls the preclusive effect of a state judgment.  *See* Wright & Miller, 18 FED. PRAC. & PROC. JURIS. § 4412 (2d ed.).

Defendants have not established that Plaintiff's employment-related claims are precluded by Maryland law because he failed to assert those claims before the Board.  First, Defendants have failed to establish that "[Plaintiff] had the opportunity to include [his employment-related claims before the Board] but he never chose to do so in the procedurally required manner."  (Def. Reply Br. at 2.)  In support of this proposition, Defendants cite the four-page excerpt of the Board proceeding transcript.  Although the Court agrees that one interpretation of the excerpt is that Plaintiff had the opportunity to argue his various employment discrimination claims before

7

the Personnel Board and failed to do so, the brief excerpt is hardly conclusive.  Defendants have offered no information about the Board's jurisdiction or procedural requirements, and no explanation as to whether Plaintiff is required to proceed before the Board in the first instance or chose to do so.

Second, Defendants have not offered sufficient authority for the proposition that Plaintiff's claims are barred under Maryland law if he could have raised them in the original proceeding.  Importantly, *res judicata* may not apply if Plaintiff could not *there* rely on a certain theory of the case or obtain the remedy that he seeks in *this* forum.  *See Esslinger v. Baltimore City*, 622 A.2d 774, 782 (Md. Ct. Spec. App. 1993); *compare Davani*, 263 Fed. Appx. at 299 ("Having made those choices, however, he committed himself to the results of those proceedings, including the fact that any subsequent attempt to relitigate his discharge would constitute claim-splitting under Virginia law.").

For the reasons stated above, Defendants have failed to establish that Plaintiff's employment-related claims are barred by issue or claim preclusion.  However, *res judicata* and the related preclusion concepts are affirmative defenses, and Defendants will have the opportunity to raise these defenses again (*e.g.*, in an eventual motion for summary judgment).  It is entirely possible that a full review of the record will reveal that Plaintiff should be barred from seeking relief for some or all of his claims.

    **B.**    **FMLA Claims**

Plaintiff has failed to adequately plead the elements of his claim for unlawful interference with an entitlement to FMLA benefits (which Plaintiff incorrectly describes as FMLA discrimination[2]).  The FMLA makes it "unlawful for any employer to interfere with, restrain, or

---

[2] The provision in the FMLA that prohibits "discrimination" is generally analyzed as a prohibition against retaliation for complaints about interferences with an employee's attempt to exercise his or her rights under the FMLA. *See* 29

deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1). The required elements of an FMLA interference claim are that (1) Plaintiff was an eligible employee; (2) Plaintiff's employer was covered by the statute; (3) Plaintiff was entitled to leave under the FMLA; (4) Plaintiff gave his employer adequate notice of his intention to take leave; and (5) the employer denied Plaintiff FMLA benefits to which he was entitled." *Rodriguez v. Smithfield Packing Co., Inc.*, 545 F. Supp. 2d 508, 516 (D. Md. 2008) (citing *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507 (6th Cir. 2006)). The amended complaint does not state a claim for FMLA interference because it fails to allege that the County denied Plaintiff any benefits to which he was entitled under the FMLA. In fact, the amended complaint recounts that Plaintiff requested and was granted leave to which he was entitled under the FMLA. (*See* Am. Compl. ¶¶ 13-17.)

However, Plaintiff has adequately stated a claim for retaliation under the FMLA. In order to state a claim for retaliation under the FMLA, Plaintiff must allege (1) that he engaged in protected activity; (2) that the employer took adverse action against him; and (3) that the adverse action was causally connected to the Plaintiff's protected activity. *Yashenko v. Harrah's NC Casino Co.*, 446 F.3d 541, 551 (4th Cir. 2006). Plaintiff has adequately pleaded facts to support each of these required elements.

Plaintiff alleges that his employer gave him a negative performance review, which indicated that he failed to meet acceptable standards in a performance category titled "Accountability/Attendance/Punctuality." (Am. Compl. ¶¶ 19-20.) Plaintiff alleges that he filed a complaint about this performance evaluation, arguing that it inaccurately reported the number of non-FMLA leave hours he had taken; Defendants subsequently revised the performance report

---

U.S.C. § 2615(a)(2) (making it "unlawful for an employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter"). For this reason, it is confusing to describe FMLA interference claims as FMLA discrimination claims.

to reflect that the original report overstated the number of non-FMLA leave hours Plaintiff had taken, but refused to adjust Plaintiff's rating in the attendance category. (*Id.* ¶¶ 23, 24, 28.) Plaintiff describes his complaint about the inflated number of non-FMLA hours as a complaint "about the Defendant's illegal use of his FMLA time as a negative factor in Defendant's employment actions." (*Id.* ¶ 29.) Taken together, the necessary implication of these allegations is that the original negative performance review counted Plaintiff's FMLA leave hours as non-FMLA leave hours.[3] Registering a complaint with an employer about such a practice is the most basic way that an employee could "oppos[e] [a] practice made unlawful" by the FMLA." *See* 29 U.S.C. 2615(a)(2). Therefore, Plaintiff has adequately pled that he engaged in activity protected by the FMLA.

Defendants argue that there could not have been a causal connection between Plaintiff's complaints and his termination, because "he had been complaining regarding the FMLA for some time before he was terminated." Although it is true that a long delay between the protected activity and the adverse action can undercut the inference of a causal connection, Defendants have not identified such a delay in this case. Plaintiff alleges that he sent written complaints of FMLA interference and retaliation to various entities and people in October, November and December 2010, and that he received increasingly hostile responses to these complaints. (*See* Am. Compl. ¶¶ 41-45.) It is plausible that he was terminated because of this series of complaints. Plaintiff has adequately pleaded facts to support his FMLA retaliation claim.

---

[3] Although it would have been helpful for Plaintiff to make this allegation more succinctly, the amended complaint adequately conveys the allegation.

### C.     ADA and Related State Law Claims

Plaintiff has failed to state a claim for discrimination or retaliation under the ADA or MD. CODE ANN. STATE GOV'T § 20-606.[4] In order to state a claim for discrimination under the ADA, Plaintiff must allege facts to support the following elements: (1) he is within the ADA's protected class; (2) he was discharged (or suffered other adverse employment action); (3) at the time of his discharge, he was performing the job at a level that met his employer's legitimate expectations; and (4) his discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination. *See Haulbrook v. Michelin N. Am.*, 252 F.3d 696, 702 (4th Cir. 2001); *EEOC v. Stowe-Pharr Mills, Inc.*, 216 F.3d 373, 377 (4th Cir. 2000). Plaintiff alleges that he informed Defendants of his asthmatic condition in 2008, but he was not dismissed until January 2011. (Am. Compl. ¶¶ 13, 14, 47.) He fails to allege any additional facts to support the inference that he was terminated because of his disability. In light of the long period of time that elapsed between Plaintiff's disclosure of his condition and his dismissal, Plaintiff has failed to plead facts sufficient to support the inference that he was discharged because of that condition.

In order to state a claim for retaliation under the ADA, Plaintiff must allege that (1) he engaged in protected activity; (2) his employer took an adverse action against him; and (3) that a causal connection existed between the adverse activity and the protected action. *Haulbrook*, 252 F.3d at 706. Plaintiff has failed to plead facts sufficient to support the inference that he engaged in activity protected by the ADA. Plaintiff alleges that he requested "a reasonable accommodation" for his disability on October 24, 2008. (Am. Compl. ¶ 13.) He further alleges that he sent a letter to the acting district director of the U.S. Department of Labor on December 7, 2010, complaining of ADA violations. (*Id.* ¶ 45.) Finally, Plaintiff alleges that "one of

---

[4] Because the same elements are required to establish a *prima facie* case under these two statutes, the Court will analyze them together.

Plaintiff's superiors admitted under oath . . . that he instituted [an] investigation in response to the grievance that Plaintiff filed against the Defendant alleging, among other things, retaliation under the [ADA]." (*Id.* ¶ 49.) However, the amended complaint does not disclose the details of Plaintiff's requested accommodation or the details of his ADA grievances. Plaintiff has therefore failed to plead facts sufficient to support the inference that Plaintiff's actions constituted protected activity, and the ADA retaliation claim must therefore be dismissed.

### D.  Computer-Related Claims

The amended complaint adequately states a claim for which relief can be granted under the ECPA. Section 2511(1)(a) prohibits any person from intentionally intercepting any wire, oral or electronic communication. The statute defines "intercept" to mean "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). Plaintiff alleges that Defendants "hacked into [his] personal computer located in his home" and reviewed personal email communication between Plaintiff and his attorney. (Am. Compl. ¶¶ 53, 54.) Relief can be granted for this violation because, although the Parties failed to address it in their papers, federal law provides a civil remedy for violations of the ECPA. "[A]ny person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate." *See* 18 U.S.C. § 2520(a). Plaintiff has therefore stated a claim under the ECPA for which relief can be granted.

The amended complaint fails to state a claim for which relief can be granted under the CFAA, which provides a private right of action for recovery of damages under limited circumstances. 18 U.S.C. § 1030(g). In order for the amended complaint to state a cause of

action under CFAA, it must allege that the violation caused at least $5,000 in economic damages. *See Global Policy Partners, LLC v. Yessin*, 686 F. Supp. 2d 642, 646-47 (E.D. Va. 2010). The Fourth Circuit recently held that this provision allows for recovery of "consequential damages . . . [meaning] costs incurred as part of the response to a CFAA violation, including the investigation of an offense." *A.V. ex rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630, 646 (4th Cir. 2009). Plaintiff asserts in his ***brief*** that he incurred costs as a result of his counsel's investigation of the alleged CFAA violation. But the ***amended complaint*** does not allege that Plaintiff incurred costs as a result of this investigation or that those costs aggregated to at least $5,000. Therefore, Plaintiff's CFAA claim must be dismissed.

Defendants have failed to establish that Plaintiff's claim for relief under MD. CODE ANN. CRIM. LAW § 7-302 should be dismissed. Under both Maryland and federal law, "not every violation of the criminal law constitutes a tort, nor does the criminal law automatically impose a tort duty upon one person that is owed to another." *Wilmington Trust Co. v. Clark*, 424 A.2d 744, 753 (Md. 1981). However, Defendants' briefs do not identify the standards for determining whether a criminal statute creates an implied private right of action. Similarly, Defendants fail to address when it is appropriate under Maryland law to impose tort liability for violations of a criminal statute. Most importantly, Defendants fail to present any argument that Maryland law does not recognize tort liability for the Defendants' alleged violations of Maryland criminal law in this case. Defendants have therefore failed to carry their burden of establishing that Plaintiff is not entitled to relief under MD. CODE ANN. CRIM. LAW § 7-302.[5]

---

[5] The Court notes that Defendants' briefs failed in a number of ways to meet the standards that the Court expects of its attorneys. In their opening brief, Defendants advocated for dismissal under a theory that is foreclosed by dispositive Fourth Circuit precedent. In several other respects—including their failure to recognize that the amended complaint asserts claims pursuant to two federal criminal statutes, not one—the briefs were confusing and misleading. The Court expects that future submissions will reflect appropriate familiarity with the record and relevant law.

## IV. CONCLUSION

Accordingly, an order shall issue GRANTING IN PART and DENYING IN PART Defendants' motion to dismiss (ECF No. 10).

Dated this 12th day of February, 2013

BY THE COURT:

_____/s/_____
James K. Bredar
United States District Judge
